## Case No. 4,113.

### DUDEN et al. v. MURPHY.

[18 Int. Rev. Rec. 174.]

Circuit Court, S. D. New York. 1873.

CUSTOMS DUTIES—CLASSIFICATION—COMMERCIAL DESIGNATION—LACES.

[Whether certain black laces, hand made, and all of silk, are dutiable at 60 per cent., as "silk laces," under section 8 of the act of 1864, or at 30 per cent., as "thread laces," under section 20 of the act of 1861 and section 6 of the act of 1862, depends upon the question whether they were known in commerce by the one or the other designation, which is a question for the jury on the evidence.]

This was an action [at law] brought [by William Duden and others] to recover an alleged excess of duty collected by the defendant [Thomas Murphy] as collector, upon an importation of plaintiffs, claimed by them to be dutiable as thread lace, at 30 per cent. ad valorem, under section 20 of the tariff act of 1861 [12 Stat. 190], and section 6 of that of 1862 [12 Stat. 549]. Duty was exacted at 60 per cent. under section 8 of the tariff act of 1864 [13 Stat. 210], as silk lace. The laces in question were made by hand, and all of silk, and were black. But one witness was examined, and his evidence sufficiently appears in the opinion of the court as stated in the charge herewith given.

Gentlemen of the Jury: In the year 1871 the plaintiffs imported a certain article of laces into this country, which were landed in the city of New York. Upon these laces the collector imposed a duty of 60 per cent. The importers, conceding that upon a portion of these laces 60 per cent. duty was properly exacted, protested that upon another portion, contained in a specified case, a duty of 30 per cent. only should be legally exacted; and having paid the duties under protest, and having appealed to the secretary of the treasury, brought their action within the proper time, to recover the excess of duties paid upon the latter mentioned goods, above 30 per cent. The preliminary steps required by the statute to enable the plaintiffs to bring their action to court were properly taken. It is obvious that where tariff acts are at all minute in their details, and where changes are made from time to time in the schedules of dutiable articles, or in the rates of duty imposed, questions will arise upon which honest differences of opinion will exist. It is to determine which party is correct in his claim that this suit is brought.

It appears that in the year 1846 a duty of twenty per cent. was imposed upon thread lace, a duty of twenty-five per cent. upon all manufactures of silk, and a duty was also imposed upon cotton lace. By the tariff of March 2, 1861, a duty of twenty per cent. was imposed upon thread lace and insertions, and thirty per cent. upon silk lace, and another duty upon cotton lace. By two subsequent statutes passed respectively in August 1861 and 1862, the duty upon thread lace was increased to thirty per cent., the duty upon silk lace was increased to forty per cent. and the duty upon cotton lace was increased to, I think, thirty-five per cent. By the statute of 1864, a duty of sixty per cent. was imposed upon silk laces. The collector claims that these goods are silk lace and properly dutiable at sixty per cent. The importers claim that these goods are thread lace and that thirty per cent. only can be legally exacted. It is conceded that the act of 1864 was not a complete substitute for the acts of 1861 and 1862, and that by the act of 1864 all preceding statutes were not repealed, but that it was an amendment, an alteration of the acts of 1861 and 1862, as to the duties only upon the goods specifically mentioned. For it is conceded in the stipulation that if the plaintiffs can recover, they are to recover the sum of one hundred and eighty-two dollars and three cents in gold, which is the difference between thirty per cent. and sixty per cent. It is true that it was claimed in the argument on the part of the government that the clause of the act of 1864, in regard to silk laces, repealed by implication the clauses of the acts of 1861 and 1862 in regard to thread laces. But it is expressly provided in the act of 1864, that the duties upon all goods not provided for in that act should be and remain as they were according to prior existing laws. It is obvious then that by the present tariff acts now in force two kinds at least of laces, to wit, thread laces and silk laces, pay a duty, the one of thirty per cent. and the other of sixty per cent.

The question before the court then is whether, within the true construction of the tariff act, the goods in controversy pay a duty of sixty per cent. or thirty per cent. In other words are the goods, within the meaning of the tariff acts, thread laces or silk laces. Within the meaning of the tariff acts, I say, because that the goods are laces and are made of silk is not denied. In general (quoting Judge Woodruff's opinion in his charge to the jury upon a similar case) "the construction and effect of a statute de-

volves upon the court as a matter of law, but sometimes the subject to which the statute relates is of such a nature that a knowledge of facts not appearing in the statute, is necessary in order to make a just application of the terms of the act—facts which the court cannot officially know, and which it is for the jury to determine upon evidence. The court could interpret the statute if there was nothing in it but that which the court is bound to know, and take judicial cognizance of, but as the statute employs terms the meaning of which the court does not necessarily know, a question of fact arises which must be submitted for the determination of a jury." Applying the principle which I have just quoted to the present case, what is the result? If there was nothing in this case but the single expression of the act of 1864, "Silk laces shall pay a duty of sixty per cent.," the court might say that this was dutiable at sixty per cent.; but it is evident that thread laces have paid a duty since 1846, and still pay a duty. The plaintiffs say that during all these years, or certainly since 1861, the goods in question have been known in trade and commerce as thread laces, and not as silk laces; that their designation and commercial denomination has not been that of silk laces, but that of thread laces. And here comes the question of fact which is to be decided, and which is to be decided by you. The term "thread laces" conveys of itself to a person not in the trade, no distinct idea. You and I, if we were not in this trade, would not know of our own knowledge what thread lace meant, because it may be made of thread, may be made of silk, or cotton, or linen, or all combined. It is, then, a descriptive term of an article. Now descriptive terms in statutes regulating the duties on imports are to be taken according to their known signification in trade and commerce, as a general rule. There might be a case where an article was so specifically described in a tariff act that a court would judicially say that the commercial signification was excluded. But here you have a duty imposed upon an article called thread lace and an article called silk lace. The plaintiffs insist that their goods are not known in trade and commerce as silk lace; and they claim that the question here to be determined does not depend upon the mere fact that they are laces made of silk. In this respect they are correct. The amount of duty is to be determined by the commercial designation. Therefore the question of fact for you to determine is, whether in the year 1864, at the time when the present tariff act was made, the goods in question were known in this country in trade and commerce, especially among importers and persons who largely dealt in them, as thread laces or as silk laces. For the purpose of determining this question, you have a right to consider all the evidence before you pertaining to the commercial designation of the article during the period covered by the statute, relating to thread laces. No evidence has been given prior to 1861. That you must look at all the facts given in evidence from 1861 down to the present time, and from that evidence determine what is or what was in 1864 the commercial designation of the articles in controversy. Was it thread lace, or was it silk lace? Now it is testified that thread laces are made of silk alone, or of cotton alone; that this article was made of silk alone, but that its material of which it is made does not determine its commercial designation; and I have already said that the real question here is not what they are made of, but what is the commercial designation. It is also testified that silk laces are made of silk, or of silk and cotton combined, and that the commercial designation does not depend upon the component parts, but that silk laces is a commercial term, denoting a particular article, whether composed of silk or of silk and cotton combined. The testimony on this point is confined to one witness, introduced by the plaintiffs; and it is agreed that it shall be deemed and considered by you that his testimony, whatever it may be, and of whatever value it may be, shall apply to the years 1861 and 1862, as fully as it was given by him, with reference to the years between 1863 and 1871. It is claimed by the plaintiffs that his testimony is full, complete, and uncontradicted, that there is no countervailing testimony, and that his testimony is, that from 1861 to 1873 the commercial designation of this article, which was imported, was uniformly and invariably "thread lace," and was universally known and recognized by importers and the trade generally as "thread lace," and was not commercially known as silk lace, but that silk lace was another and distinct article. It is claimed by the defendant that his testimony shows that this term, "thread laces," extended only to linen lace, or to linen and cotton lace combined. If not so, that the term extended only to white lace, and that black thread lace was not, commercially speaking, a thread lace. The question for you, gentlemen, is one of fact: was this article, between March, 1861, and the date of the act of 1864, and particularly at the latter time, commercially known and designated in trade in this country, especially among importers and large dealers in this country, as thread lace, or as silk lace? If it was known at the time of the act of 1864 as thread lace, then it was not dutiable as silk lace, and you will find for the plaintiffs to recover one hundred and eighty-two dollars and three cents in gold. If it was not known as thread lace, and was known commercially as silk lace, then you will find for the defendant; or, if by "thread lace" is commercially meant linen lace and cotton lace, or white lace exclusively, and not black thread lace, then you must find for the defendant. I am asked to charge you that if the jury believe that laces are generally known as of four different kinds, viz.:

linen, cotton, silk, and worsted, according to their material, or chief component material, and that the goods in controversy are not included in any of the designations commercially given to laces of linen, cotton, or worsted, but are included by their commercial name among the laces known to be and recognized as silk laces, they were subject to sixty per cent. duty, and defendant is entitled to a verdict. I have already charged you, gentlemen, that if these laces are commercially known and designated by importers and in the trade as "silk laces," then the defendant is entitled to your verdict. I do not think I can make that any more plain.